UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

DEBORAH TEASDALE,

       Plaintiff,               **<u>MEMORANDUM & ORDER</u>**

   - against –            08-CV-1684 (KAM)

THE CITY OF NEW YORK,

       Defendant.
----------------------------------------X

**MATSUMOTO, United States District Judge:**

      Plaintiff Deborah Teasdale alleges that defendant City of New York ("City") discriminated against her based on age, pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and sex, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (ECF No. 11, Amended Complaint ("Am. Compl."), 7/29/08.) Plaintiff brings the same claims pursuant to the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). (*Id.*)

      Defendant's motion for summary judgment to dismiss all of plaintiff's claims is pending before the court. (ECF Nos. 108-115, 12/3/12.) Defendant argues that plaintiff (i) cannot establish a *prima facie* case of sex or age discrimination based on either disparate treatment or disparate impact, and (ii) that defendant had a legitimate business

reason for terminating plaintiff's probationary employment. (ECF No. 111, Memorandum in Support of Motion for Summary Judgment ("Mem."), 12/3/11.)  For the reasons set forth below, defendant's motion for summary judgment is granted.

<u>**BACKGROUND**</u>

The following facts, taken from the parties' statements pursuant to Local Civil Rule 56.1, are undisputed unless otherwise indicated.  The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving plaintiff.

**A. Plaintiff's Probationary Employment**

Plaintiff is a woman over 40 years old.  (ECF No. 110, Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Defs. 56.1 Stmt.") ¶ 1 (citing Am. Compl.); Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts ("Pls. 56.1 Stmt.") ¶ 1.)[1]  Plaintiff applied for Civil Service Examination No. 2077, Emergency Medical Specialist-EMT, in 2004.  (Defs. 56.1 Stmt. ¶ 3.)  Civil Service Examination No. 2077 states, among "requirements to be appointed," that "[s]uccessful completion of the Emergency Vehicle Operations

---

[1] Plaintiff admits to nearly all of the facts proffered by defendant in defendant's Local Rule 56.1 Statement of Undisputed Material Facts.  For the purposes of brevity, the court will only cite to defendant's 56.1 statement to the extent that both parties agree with defendant's proffered fact.

Course (EVOC) is required prior to the completion of the probationary period." (*Id.* ¶ 4.)  Plaintiff began working as a provisional Emergency Medical Specialist ("EMT") on probationary status for the Fire Department of the City of New York ("FDNY") in January 2006.  (*Id.* ¶ 2.)  Plaintiff's one-year probationary period commenced upon her provisional EMT appointment in January 2006.  (*Id.* ¶ 5.)

The purpose of the EVOC is to "is to train personnel on all aspects of vehicle operation, with an emphasis on safety." (*Id.* ¶ 6.)  The EVOC requires passing both a written examination and a practical evaluation.  (*Id.* ¶ 7.)  To pass the practical evaluation, an EVOC student must successfully complete the following driving components: (1) basic maneuvers; (2) enhanced maneuvers; (3) simulation training; and (4) road test evaluation.  (*Id.*)  An EVOC student must pass the basic maneuvers component before proceeding to enhanced maneuvers. (*Id.*)

The basic maneuvers component requires EVOC students to drive a vehicle forward and in reverse through a series of skill tests, respectfully known as serpentine driving, lane change, 150 foot alley, parallel parking (left and right), and backing up (left, right, and straight).  (*Id.* ¶ 8.)  Each maneuver is graded based on time and point value and "[a]ll cone contacts will be counted and a 5 second penalty will be

3

added for each cone struck." (*Id.*)  An EVOC student who fails
three or more of these basic skills tests fails the basic
maneuvers component. (*Id.* ¶ 9.)  A student who fails the basic
maneuvers component once, however, can take a remedial session
and be retested. (*Id.*)  Failing the test a second time
constitutes a course failure and results in termination. (*Id.*)

Plaintiff first took the basic skills component of
the EVOC on May 31, 2006, and was evaluated by instructors
Christine Forster, Michael Caputo, and Margaret Bennett, and
failed three basic skills tests. (*Id.* ¶¶ 10-11.)  The
instructors commented in evaluations that Plaintiff
demonstrated poor judgment when operating an ambulance in
reverse and did not use mirrors properly. (*Id.* ¶ 13.)
Plaintiff testified that she "understood why [she] didn't
pass," due to a lack of practice and because she "failed a
number of the skills." (Defs. 56.1 Stmt. ¶ 12, Pls. 56.1 Stmt.
¶ 12.)  Because plaintiff failed three basic skills tests, she
did not successfully complete the basic skills component of the
EVOC and was prohibited from operating FDNY vehicles. (Defs.
56.1 Stmt. ¶ 14.)

Six male students and one female student from
plaintiff's EVOC class successfully completed the EVOC, while
four female students and one male student failed the EVOC.
(*Id.* ¶ 15.)  Plaintiff testified that the female student who

4

passed was a former Marine with experience driving in the military.  (*Id.* ¶ 16.)

Plaintiff was scheduled to take a remedial retest but was unable to return to class because her wallet was stolen. (*Id.* ¶ 17.)  Four female students and two male students who did attend the class were tested and passed the EVOC, while one female student failed a second time.  (*Id.* ¶ 18.)  One of the female students in this class who passed, had, like plaintiff, failed her initial attempt.  (*Id.*)

After her initial EVOC failure, plaintiff received individualized emergency vehicle training from a FDNY lieutenant.  (*Id.* ¶ 19.)  Plaintiff took the basic skills test a second time on November 3, 2006, and was evaluated by instructors Michael Koenke, Michael Caputo, and Margaret Bennett.  (*Id.* ¶ 20.)  Plaintiff again failed three of the basic skills tests, and testified that she remembered "hitting some cones" during her skills test and that it was possible to hit the curb a little and not know.  (*Id.* ¶¶ 21–22.)  Plaintiff asserts that she hit cones because she was not allowed to practice.  (Pls. 56.1 Stmt. ¶ 22.)   Four male students and two female students in the November 3, 2006 EVOC class successfully completed the EVOC, while plaintiff and a male student failed the EVOC for a second time.  (Defs. 56.1 Stmt. ¶ 24.)  In their evaluations, the instructors noted that, among other issues,

plaintiff showed poor judgment in reversing the vehicle and improperly used mirrors. (*Id.* ¶ 23.) Because plaintiff had now failed EVOC twice, her probationary employment was terminated by close of business on November 24, 2006. (*Id.* ¶ 25.) Plaintiff was notified of her termination in a letter dated November 21, 2006. (*Id.*)

### B. Plaintiff's Allegations

Plaintiff alleges that instructor Margaret Bennett said she was "an older learner" and instructor Christine Forster said that she did not "have the reflexes." (*Id.* ¶ 28.) Plaintiff also testified that instructors Forster, Caputo, and Koenke did not specifically comment about her age. (*Id.*)

Plaintiff claims that the EVOC program discriminated against her, and against women, by "wip[ing] out every wom[a]n in the class except for one who was a [M]arine, within the first few days." (*Id.* ¶ 29.) Plaintiff also stated that there were more men than women in her class, and that, based on what she saw, women were performing as well as the men in the EVOC program. (*Id.* ¶ 30.) Plaintiff also testified that she understood that "people with perhaps more experience or maybe their temperament was less shy or they were more aggressive, could handle that environment perhaps, performing [in] that environment better." (*Id.* ¶ 32.)

**C.   Statistical Data**

On June 14, 2012, the court ordered defendant to produce to plaintiff "raw data" or "pool" numbers that included the age, pass rate, and sex, for all NYFD EMTs who took the EVOC test in 2006, 2007, and 2008 by July 16, 2012.  (Order dated 6/14/2012.)  The court later clarified this order to state that defendant was directed to produce "raw data" or "pool" numbers for the time period "between 2006 to January 9, 2008."  (Order dated 6/15/2012.)  The raw data produced by defendant includes the date of birth, sex, and test result of each candidate who took the EVOC between January 2006 and January 9, 2008.  (ECF No. 113, Declaration of Ann M. Fitton ("Fitton Decl.") at Exhibit A.)  This data shows that, between January 2006 and January 9, 2008, 408 of the 416 men who took the EVOC passed, a 98% success rate, while 121 of the 136 women who took the EVOC passed, an 89% success rate.  (Defs. 56.1 Stmt. at ¶ 33.)  In the same time period, 497 of the 515 candidates under the age of 40 who took the EVOC passed, a 97% success rate, while 35 of the 40 candidates over the age of 40 who took the EVOC passed, an 88% success rate.  (*Id.*) Accordingly, the adverse impact ratio for women is 91% and the adverse impact ratio for candidates over 40 is also 91%. Plaintiff denies the accuracy, completeness, and consistency of these statistics, which she claims are not in the Fitton

declaration submitted by defendants.  (Pls. 56.1 Stmt. ¶ 33.)
The Fitton declaration, however, does include the raw data from
which defendant derived these statistics.  (Fitton Decl. at
Exhibit A.)

<u>**DISCUSSION**</u>

**A. Summary Judgment Standard**

The court shall grant summary judgment "if the movant
shows that there is no genuine dispute as to any material fact
and that the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some*
alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no *genuine* issue of *material*
fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48
(1986) (emphasis in original); *see also Opals on Ice Lingerie,
Designs by Bernadette, Inc. v. Bodylines, Inc.*, 320 F.3d 362,
368 (2d Cir. 2003) (same).  "A fact is material if it might
affect the outcome of the suit under the governing law."
*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712,
720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d
31, 35 (2d Cir. 2008)).  "An issue of fact is genuine if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Id.* (quoting *Roe*, 542 F.3d at 35).
Additionally, no genuine issue of material fact exists "unless

8

there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating "the absence of a genuine issue of material fact." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party.  *Id.*  Nevertheless, the nonmoving party may not rest merely on allegations or denials but must instead set out specific facts showing a genuine issue for trial.  *See id.* ("To defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (internal quotation and citation omitted).

"Employment discrimination cases raise special issues on summary judgment." *Kenney v. New York City Dep't of Educ.*, No. 06 Civ. 5770, 2007 U.S. Dist. LEXIS 77926, at *7 (S.D.N.Y. Oct. 22, 2007).  Specifically, employment discrimination cases

that involve a dispute concerning the "employer's intent and
motivation," may not be suitable for summary judgment. *Id.;
see also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.
2008).  The Second Circuit has noted, however, that "we went
out of our way to remind district courts that the impression
that summary judgment is unavailable to defendants in
discrimination cases is unsupportable." *Weinstock v. Columbia
Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation and
citation omitted); *see also Reeves v. Sanderson Plumbing
Prods., Inc.*, 530 U.S. 133, 148 (2000) ("trial courts should
not 'treat discrimination differently from other ultimate
questions of fact'") (quoting *St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502, 524 (1993)); *Holcomb*, 521 F.3d at 137 ("Even in
the discrimination context, however, a plaintiff must provide
more than conclusory allegations to resist a motion for summary
judgment.").

**B. Disparate Treatment Claims under State and Federal Law**

**1. Legal Standard**

Disparate treatment claims brought pursuant to the
ADEA, Title VII, and the NYSHRL are analyzed under the burden-
shifting framework explained in *McDonnell Douglas Corp. v.
Green*, 411 U.S. 792, 802-04 (1973).  *See Taddeo v. L.M. Berry &
Co.*, No. 12-3591-cv, 2013 U.S. App. LEXIS 9579, at *3-4 (2d
Cir. May 13, 2013) (summary order) (holding *McDonnell Douglas*

10

framework applies to ADEA and Title VII claims); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (applying *McDonnell Douglas* framework to NYSHRL claims).  To establish a *prima facie* case of employment discrimination under *McDonnell Douglas*, a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation and citation omitted); *see also Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (same).

If a plaintiff can establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason to support its employment decision. *Woodman*, 411 F.3d at 76; *see also McDonnell Douglas*, 411 U.S. at 802.  This "burden is one of production, not persuasion . . . and involves no credibility assessment of the evidence." *Pathare v. Klein*, No. 06-CV-2202, 2008 U.S. Dist. LEXIS 69119, at *12 (S.D.N.Y. Sept. 12, 2008) (citation omitted), *aff'd*, 347 F. App'x 646 (2d Cir. Sept. 30, 2009) (summary order).

If a defendant satisfies its burden, the plaintiff
must present evidence to demonstrate that defendant's reason is
a mere pretext for an impermissible discriminatory motive.
*McDonnell Douglas*, 411 U.S. at 804.  In the summary judgment
context, this means the plaintiff must "establish a genuine
issue of material fact either through direct, statistical or
circumstantial evidence as to whether the employer's reason for
its decision to discharge is false *and* as to whether it is more
likely that a discriminatory reason motivated the employer to
make the adverse employment decision."  *Gallo v. Prudential
Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1225 (2d Cir.
1994) (emphasis in original).

Additionally, in an age discrimination claim, the
plaintiff under this step must show that "age was the but-for
cause of the challenged adverse employment action and not just
a contributing or motivating factor."  *Gorzynski v. JetBlue
Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (internal
quotation and citation omitted).

**2. Analysis**

Defendant argues that plaintiff cannot establish a
*prima facie* case of age or sex discrimination under federal or
New York law because (i) she did not satisfactorily perform her
job duties as a result of twice failing the EVOC, a course
required for completion of probation, and (ii) the

12

circumstances surrounding plaintiff's EVOC failures do not indicate any intent to discriminate based on age or sex. (Mem. at 4-7.) Defendant also contends that it has articulated a legitimate, non-discriminatory reason for terminating plaintiff that is not mere pretext. (*Id.* at 7.)

The record demonstrates that plaintiff was terminated because she was not qualified for her job due to her inability to pass the basic skills component of the EVOC. It is undisputed that a probationary employee must successfully complete the EVOC before the end of the probationary period, (Defs. 56.1 Stmt. ¶ 4), and that an EVOC student who fails three or more basic skills tests fails the basic maneuvers component of the EVOC, (*id.* ¶¶ 8-9). It is also undisputed that plaintiff took the basic skills test on May 31, 2006, and November 3, 2006, and failed three basic skills tests each time, thereby failing the basic skills component of the EVOC twice. (*Id.* ¶¶ 10-11, 20-21.) Plaintiff's instructors noted in evaluations of each attempt that she demonstrated poor judgment when operating an ambulance in reverse and failed to use mirrors properly. (*Id.* ¶¶ 13, 23.) Finally, plaintiff was terminated by close of business on November 24, 2006 after failing the basic skills test twice. (*Id.* ¶ 25.)

Plaintiff nevertheless argues that she was qualified for the job because she "completed all required training

courses as a provisional EMT *except the EVOC program*."
(Plaintiff's Memorandum in Opposition to Defendant's Motion for
Summary Judgment ("Opp."), 9/24/12, at 15 (emphasis added).)
Yet this claim only acknowledges that plaintiff had failed to
complete the job requirement that she pass the EVOC; it does
not demonstrate that plaintiff was in fact qualified to be a
permanent EMT.

> Plaintiff also asserts that she "didn't feel as if
[she] was doing that poorly" during the EVOC basic skills
tests, that she received a passing grade on her serpentine test
from one instructor after her November 3, 2006 attempt, and
that she saw a male student whom she believed performed worse
than she did still pass the EVOC. (*Id.* at 16.) But
plaintiff's personal feelings and opinions about how she did
during the EVOC, her alleged passing grade on one basic skills
test from one instructor, and her perceptions of how another
male student performed do not raise any material issues to
dispute the facts that plaintiff failed three basic skills
tests in the EVOC during each attempt, which she has admitted,
(Defs. 56.1 Stmt. ¶¶ 11, 21; Pls. 56.1 Stmt. ¶¶ 11, 21), and
that passing the EVOC is a requirement for employment as an
EMT, (Defs. 56.1 Stmt. ¶ 4).

> Third, plaintiff argues that several comments by
instructors, when "considered in light of the statistical

evidence," show that "[d]efendant intended to discriminate against the Plaintiff based on her age and gender." (Opp. at 18.) Instructor Margaret Bennett said that plaintiff was "an older learner," instructor Christine Forster commented that plaintiff did "not have the reflexes," (Defs. 56.1 Stmt. ¶ 28), and instructor Michael Caputo allegedly said plaintiff had slow reflexes, (Opp. at 18).

These comments do not establish that defendant intended to discriminate against plaintiff when considered in light of facts that are not in dispute. Given that plaintiff has admitted that she failed the basic skills component twice, that her instructors noted that she used poor judgment during her attempts, and that she acknowledged hitting "some cones" during her test, it is clear that the instructors' comments about plaintiff's reflexes were no more and no less than comments about plaintiff's reflexes. (Defs. 56.1 Stmt. ¶¶ 13, 22, 23, 28.) Additionally, the comment that plaintiff was "an older learner" does not on its face suggest an intent to discriminate against plaintiff because of her age and plaintiff has not proffered any evidence to suggest such an intent. To the contrary, City asserts that plaintiff has testified that the instructor who made this comment did so to be "nice" to plaintiff and to assist her in overcoming her feelings of

fright and frustration, which plaintiff has not disputed.
(Mem. at 6.)

Plaintiff also incorrectly claims that she is entitled to the finding that only women who fail the EVOC twice are terminated, because she was not provided with termination letters for men who failed the EVOC twice.  (Opp. at 17.) Plaintiff asserts that such men were in fact not terminated and continue to be employed by the FDNY and that she is entitled to this assertion because of the summary judgment standard of review.  (*Id.*)  Plaintiff does not assert that she requested this information during discovery.  (*Id.*)  Instead, plaintiff confirmed at her deposition that she could only identify two females under the age of 40 in response to defendant's interrogatory number 3, which asked her to identify *all* persons whom plaintiff believed failed the EVOC but were allowed permanent status as an EMT.  (ECF No. 114, Declaration of Maxwell D. Leighton, Exhibit B, Plaintiff's Deposition of January 29, 2009 ("Pl. Dep.") at 65-66, 7/30/12.)

Moreover, plaintiff admits that "[s]uccessful completion of the Emergency Vehicle Operations Course (EVOC) is required prior to the completion of the probationary period," (Defs. 56.1 Stmt. ¶ 4), and that failing the EVOC test a second time constitutes a course failure and results in termination, (*id.* ¶ 9).  Furthermore, Plaintiff has only identified one male

16

employee who was allowed to take EVOC a third time, but, as
defendant notes, this employee was given an extra test attempt
likely as a result of a medical injury.  (ECF No. 115,
Defendant's Reply Memorandum of Law ("Reply"), 12/3/12, at 6
n.3.)  Plaintiff has not identified any similarly situated
probationary employee who was a male over the age of 40 who was
not terminated after twice failing the EVOC.

      Finally, plaintiff argues that her statistical
analysis shows that defendant intended to discriminate against
plaintiff because of "significant disparities" in EVOC pass
rates.  (Opp. at 18.)  Statistical evidence on its own is
insufficient to support an inference of intentional
discrimination.  *See Martin v. Citibank, N.A.*, 762 F.2d 212,
218 (2d Cir. 1985) ("statistical proof alone cannot ordinarily
establish a prima facie case of disparate treatment"); *Brown v.
City of New York*, No. 10 Civ. 3104, 2011 U.S. Dist. LEXIS
137880, at *36 (S.D.N.Y. Nov. 29, 2011) ("bare statistics
standing alone do not raise a genuine issue of fact upon which
a reasonable fact finder could conclude that plaintiff's
termination was the result of discriminatory animus"), *aff'd*,
512 F. App'x 29 (2d Cir. 2013) (summary order); *DeLuca v. Bank
of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06 Civ. 5474, 2008 U.S.
Dist. LEXIS 25916, at *40 (S.D.N.Y. Mar. 29, 2008) ("Although
statistics are admissible in a disparate treatment case

17

involving a single plaintiff, statistical evidence alone may not suffice to make out a prima facie case of discrimination.").

It should be noted that City has articulated a legitimate, nondiscriminatory reason to support its employment decision to terminate plaintiff – specifically, plaintiff's failure to pass the EVOC basic skills component – and plaintiff has not presented any evidence that defendant's stated reason for terminating her was mere pretext.  In addition to plaintiff's assertions that the court has already discussed and found insufficient to state a *prima facie* claim, plaintiff points to an anonymous quotation from a New York Post article published on March 11, 2007 that references "weeding out" candidates during probationary training.  (Opp. at 18-19.) This single, anonymous quote in a newspaper article, which is hearsay, does not mention age or sex discrimination and consequently fails to raise any material issue to challenge defendant's showing that plaintiff was terminated for legitimate, non-discriminatory reasons.

Therefore, plaintiff's federal and state law claims alleging disparate treatment are hereby dismissed with prejudice because plaintiff is unable to make a *prima facie* showing that she was qualified for the job or that the circumstances surrounding her employment give rise to any

indication that she was discriminated against because of her
age or sex.  For the reasons discussed, plaintiff has also
failed to show that age was the "but-for" cause of her
termination as required for age discrimination claims.
Finally, Defendant has articulated a legitimate,
nondiscriminatory reason to support its employment decision and
plaintiff has not shown that defendant's employment decision
was pretext for discrimination.

### C. Disparate Impact Claims under State and Federal Law

#### 1. Legal Standard

To establish a *prima facie* case of disparate impact
based on age or sex discrimination under New York state or
federal law, a plaintiff must show "that a facially neutral
employment policy or practice has a significant disparate
impact" on members of a protected class.  *Byrnie v. Town of
Cromwell Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001) (quoting
*Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998);
*see also Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir.
1999) (stating that "claims under the NYSHRL are analyzed
identically to claims under the ADEA and Title VII").  "This
requires a plaintiff to (1) identify a specific employment
practice or policy; (2) demonstrate that a disparity exists;
and (3) establish a causal relationship between the two." *Chin
v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012)

(internal quotation and citation omitted).  Correspondingly,
"statistical proof almost always occupies center stage in a
prima facie showing of a disparate impact claim." *Robinson v.*
*Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir.
2001).  "The statistics must reveal that the disparity is
substantial or significant . . . . [and] must be of a kind and
degree sufficient to reveal a causal relationship between the
challenged practice and the disparity." *Id.* (internal
quotation and citation omitted).  Accordingly, the statistics
"must reflect a disparity so great that it cannot be accounted
for by chance." *EEOC v. Joint Apprenticeship Comm. of the*
*Joint Indus. Bd. of the Elec. Indus.*, 186 F.3d 110, 117 (2d
Cir. 1998).

      In evaluating whether a disparity is "substantial" or
"significant," courts may be guided by the "four-fifths rule"
described in the Equal Employment Opportunity Commission's
Uniform Guidelines on Employee Selection Procedures.  The EEOC
has explained that "[a] selection rate for any race, sex, or
ethnic group which is less than four-fifths (4/5) (or eighty
percent) of the rate for the group with the highest rate will
generally be regarded by the Federal enforcement agencies as
evidence of adverse impact." 29 C.F.R. § 1607.4(D).[2]

---

[2] The full provision states: "A selection rate for any race, sex, or ethnic
group which is less than four-fifths (4/5) (or eighty percent) of the rate

A defendant can counter a plaintiff's *prima facie*
disparate impact claim by "showing that either no statistically
significant disparity in fact exists or the challenged practice
did not cause the disparity."  *Chin*, 685 F.3d at 151 (internal
quotation and citation omitted).  The defendant "may directly
attack plaintiff's statistical proof by pointing out
deficiencies in the data or fallacies in the analysis . . . .
[or] demonstrat[e] that the challenged practice is job related
for the position in question and consistent with business
necessity."  *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361,
382 (2d Cir. 2006) (internal quotation and citation omitted).
If a defendant argues that the challenged practice is job
related, however, the plaintiff can "show[] that other tests or

---

for the group with the highest rate will generally be regarded by the
Federal enforcement agencies as evidence of adverse impact, while a greater
than four-fifths rate will generally not be regarded by Federal enforcement
agencies as evidence of adverse impact. Smaller differences in selection
rate may nevertheless constitute adverse impact, where they are significant
in both statistical and practical terms or where a user's actions have
discouraged applicants disproportionately on grounds of race, sex, or ethnic
group. Greater differences in selection rate may not constitute adverse
impact where the differences are based on small numbers and are not
statistically significant, or where special recruiting or other programs
cause the pool of minority or female candidates to be atypical of the normal
pool of applicants from that group. Where the user's evidence concerning the
impact of a selection procedure indicates adverse impact but is based upon
numbers which are too small to be reliable, evidence concerning the impact
of the procedure over a longer period of time and/or evidence concerning the
impact which the selection procedure had when used in the same manner in
similar circumstances elsewhere may be considered in determining adverse
impact. Where the user has not maintained data on adverse impact as required
by the documentation section of applicable guidelines, the Federal
enforcement agencies may draw an inference of adverse impact of the
selection process from the failure of the user to maintain such data, if the
user has an underutilization of a group in the job category, as compared to
the group's representation in the relevant labor market or, in the case of
jobs filled from within, the applicable work force."  29 C.F.R. § 1607.4(D).

selection devices, without a similarly undesirable [discriminatory] effect, would also serve the employer's legitimate interest." *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).

### 2. Analysis

#### a. Plaintiff's Statistical Analysis

Plaintiff relies on a statistical analysis to show that City's policy of terminating provisional EMTs who fail the EVOC twice has a disparate impact on women and those over 40. (Opp. at 21-22.)  Plaintiff alleges that only one male over 40 failed the EVOC twice while seven women over 40, or 99% of women, failed the EVOC test twice.  (*Id.* at 22.)  Plaintiff alleges that this high failure rate for women over 40 shows that the EVOC has a disparate impact.  (*Id.* at 22-23.)

This argument is deeply flawed because plaintiff's sample size of seven women and one man is extremely small, and the EEOC has cautioned that "[g]reater differences in selection rate may not constitute adverse impact where the differences are based on small numbers and are not statistically significant."  29 C.F.R. § 1607.4(D).  "[W]here statistics are based on a relatively small number of occurrences, the presence or absence of statistical significance is not a reliable indicator of disparate impact . . . . [and] in cases involving small or marginal samples, other indicia raising an inference

22

of discrimination must be examined." *Myree v. Local 41, Int'l Bhd. of Elec. Workers*, 789 F. Supp. 597, 612 (W.D.N.Y. 1992) (quoting *Waisome v. Port Auth. of N.Y. & N.J.*, 948 F.2d 1370, 1375, 1379 (2d. Cir. 1991). Plaintiff's analysis of men over 40 and women over 40 only accounts for eight employees, or 1.2 percent, of the approximately 555 employees who took EVOC between 2006 and 2008. (Defs. 56.1 Stmt. ¶ 33.) Therefore, because "this [c]ourt cannot determine that the disparity is simply not the result of chance," plaintiff's statistical analysis has no probative value and plaintiff has accordingly failed to state a *prima facie* claim of age or sex discrimination based on its statistical analysis. *Myree*, 789 F. Supp. at 612.[3]

### b. Defendant's Statistical Analysis

Defendant's statistical analysis shows that there is no substantial or significant disparity in the pass rates between men and women or between employees older or younger than 40. (Mem. at 10-11.) Defendant's statistical analysis is

---

[3] Plaintiff lists various other statistics in her Local Rule 56.1 statement in opposition to defendant's Local Rule 56.1 statement. (Pls. 56.1 Stmt. at 11-15; Opp. at 7-10.) These statements are also unsupported by admissible evidence or are otherwise deficient for the reasons stated in this section. Moreover, plaintiff's other analysis of sex discrimination in her opposition papers inexplicably seems to rely on only 27 candidates, a sample too small to have probative value, and her other analysis of age discrimination also lacks probative value because it lumps together those who only failed the EVOC once with those who failed the EVOC twice, thereby inflating the failure rate by including some employees not at risk for termination. (Opp. at 7-8.) Additionally, as defendant points out, plaintiff ignores the fact that eight women over the age of 40 successfully completed the EVOC on either their first or second attempt. (Reply at 7.)

based on the pass and failure rates for all EMTs who took the
EVOC between January 2006 and January 9, 2008. (Defs. 56.1
Stmt. ¶ 33; Fitton Decl. ¶ 9 and Ex. A.)  Defendant compared
the pass rates for those who passed the EVOC exam within two
attempts against those who failed the EVOC twice, subsequently
resulting in termination from the program. (Defs. 56.1 Stmt.
¶ 33; Fitton Decl. ¶¶ 9-10.)  This analysis demonstrated that,
between January 2006 and January 9, 2008, 408 of the 416 men
who took the EVOC passed, a 98% success rate, while 121 of the
136 women who took the EVOC passed, an 89% success rate.
(Defs. 56.1 Stmt. ¶ 33.)  In the same time period, 497 of the
515 candidates under the age of 40 who took the EVOC passed, a
97% success rate, while 35 of the 40 candidates over the age of
40 who took the EVOC passed, an 88% success rate. (*Id.*)

        Under defendant's analysis, the pass rate ratio for
women is thus 91% of the rate for men and the pass rate ratio
for candidates over 40 is also 91% of the rate for candidates
under 40 years of age.  Because these pass rate ratios are
higher than 80 percent, as prescribed in 29 C.F.R. § 1607.4(D),
any disparity in pass rates is presumptively not "substantial"
or "significant" and thus results in no disparate impact on
women or those over the age of 40.  29 C.F.R. § 1607.4(D).

        Plaintiff disputes defendant's analysis. (Pls. 56.1
Stmt. at 11-13.)  First, Plaintiff alleges that defendant did

not separate pass rates by calendar year.  (*Id.* at 11.)  But
plaintiff fails to explain why this information is necessary,
and it is unclear to the court why an annual breakdown would be
relevant.  The court thus does not consider this objection to
be a material issue.  (*Id.*)

Plaintiff also points to discrepancies related to
certain employees as indicative of the flaws in defendant's
analysis.  (*Id.* at 12-13.)  Even if plaintiff were correct that
there were discrepancies concerning these employees, the court
finds that it would not raise an issue of material fact as it
affects less than five percent of the employees for whom
defendant has provided data.

Third, plaintiff contends that the list of EVOC test
takers omits employees listed on other documents produced by
defendant.  (*Id.* at 12.)  As defendant points out, however,
this discrepancy is the result of plaintiff's conflating
certain documents that identify EMTs hired on certain dates and
other documents that only identify EMTs who took the EVOC on
certain dates.  (Reply at 6-7.)  Therefore, this objection also
fails to raise a material issue of fact.

Finally, plaintiff has misinterpreted the data
produced by defendant by grouping employees who failed the EVOC
test once with those who failed the EVOC test twice in its
various other objections (Pls. 56.1 Stmt. at 13-15.)  As

25

defendant points out, plaintiff's approach inflates the failure rates and produces irrelevant analyses because only employees who fail the EVOC test twice are subject to termination. (Reply at 5-7.)  These objections are thus not material or relevant as they are based in part on data concerning employees not at risk for termination.

### c. Plaintiff's Other Arguments

Plaintiff makes several other arguments to support her disparate impact claim.  First, plaintiff asserts, without any factual support, that the EVOC examination tests maneuvers that "an actual EMT is unlikely to ever encounter in the field," such as parallel parking and driving in a serpentine pattern.  (Opp. at 21.)  Yet plaintiff does not dispute defendant's showing that FDNY ambulances are heavy (12,500 pounds), and large (22 feet and 10 inches long, 9 feet wide, and 9 feet tall), and are dispatched in response to 911 calls for emergency medical assistance.  (Fitton Decl. ¶¶ 5-6.)  Nor does plaintiff dispute defendant's showing that FDNY ambulances are staffed by two EMTs or paramedics, and that EMS personnel must be able to operate ambulances in emergency mode and against traffic controls under all weather conditions when a patient requires an emergency response and transport to the hospital.  (*Id.* ¶ 5.)  Further, plaintiff fails to refute defendant's showing that it is necessary to test the ability of

26

EMS personnel to operate and maneuver ambulances at high speeds through narrow streets, in and out of narrow ambulance bays, and to parallel park in small places. (*Id.* ¶ 6.)[4]

Second, plaintiff claims, without factual support, that the EVOC only provides training to men on how to operate an ambulance before a test but does not provide the same training to women. (Opp. at 21.)   There is no evidence in the record, however, to suggest this is true.   To the contrary, plaintiff has conceded that both men and women attended a remedial class before a second EVOC attempt, and that she personally received individualized emergency vehicle training from a FDNY lieutenant before her second test. (Defs. 56.1 Stmt. ¶¶ 18-19; Pls. 56.1 Stmt. ¶¶ 18-19.)

Third, plaintiff proposes, without citation to authority or facts, that (i) there is no need for all EMTs to drive ambulances since they are partnered with other EMTs, and (ii) that FDNY should provide training to a prospective EMT until the EMT can pass the EVOC exam. (Opp. at 13-14.) Neither of these proposals "show that other tests or selection devices . . . would also serve the employer's legitimate interest." *Guntur v. Union Coll.*, No. 88-CV-1080, 1991 U.S. Dist. LEXIS 18261, at *14 (N.D.N.Y Dec. 13, 1991) (quoting

---

[4] Defendant does not and need not argue that "the challenged practice is job related for the position in question and consistent with business necessity" based on its undisputed factual showing. *Gulino*, 460 F.3d at 382.

*Watson*, 487 U.S. at 998).  The proposal to abandon the EVOC
basic skills component would eliminate defendant's ability to
determine whether EMTs possess the enhanced awareness and
skills to drive an ambulance through congested streets under
emergency conditions.  Plaintiff's other proposal to allow an
employee to take the test an unlimited number of times would
force defendant to incur costs indefinitely while paying the
salary of an EMT who was unable to drive an ambulance safely.

   Thus, all of plaintiff's disparate impact claims of
age and sex discrimination under state and federal law are
dismissed with prejudice because plaintiff, despite having a
full opportunity to take discovery, has failed to make a *prima
facie* showing of a disparate impact based on age or sex
discrimination.  Defendant has shown through its statistical
analysis that there is no disparate impact established with
regard to the EVOC between men and women or between employees
younger than 40 and older than 40.

**D. NYCHRL Claims**

   The standard for claims under the NYCHRL is broader
than the standard for applicable claims under state or federal
law.  The Local Civil Rights Restoration Act of 2005 (the
"Restoration Act"), which amended the NYCHRL, provides, in
relevant part, that

> [T]he provisions of New York City's Human
> Rights Law are to be construed
> independently from similar or identical
> provisions of New York state or federal
> statutes. Interpretations of New York state
> or federal statutes with similar wording
> may be used to aid in interpretation of New
> York City Human Rights Law, viewing
> similarly worded provisions of federal and
> state civil rights laws as a floor below
> which the City's Human Rights law cannot
> fall, rather than a ceiling above which the
> local law cannot rise.

N.Y.C. Local Law No. 85 of 2005, § 1 (Oct. 3, 2005).

The Second Circuit has clarified that claims brought under the NYCHRL are "reviewed 'independently from and more liberally than' federal or state discrimination claims." *Ben-Levy v. Bloomberg*, No. 12-2795-cv, 2013 U.S. App. LEXIS 8843, at *6 (2d Cir. May 1, 2013) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). Nevertheless, the NYCHRL "requires a showing of some evidence from which discrimination can be inferred." *Id.* at *6-7.

### 1. Legal Standard for Disparate Treatment Claims

The Second Circuit has cautioned that "[i]t is unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims" alleging disparate treatment. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). The Second Circuit has explained that, at the very least, the NYCHRL has simplified the discrimination inquiry. *Id.* To

29

prevail on a disparate treatment claim under the NYCHRL, "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Id.* Although "[t]he employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination . . . it is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions." *Id.* (quoting *Williams v. NYC Hous. Auth.*, 872 N.Y.S.2d 27, 38, 40 n.27 (N.Y. App. Div. 1st Dep't 2009) (alteration in original).

### 2. Analysis of Disparate Treatment Claims

This court has independently reviewed plaintiff's age and sex discrimination disparate treatment claims under the NYCHRL as instructed by the Second Circuit. *See Mihalik*, 715 F.3d at 110 n.8. As described *supra* in Discussion section B.2, however, the court finds that plaintiff has failed to show that defendant treated her less well even in part because of a discriminatory reason, that the record establishes as a matter of law that defendant terminated plaintiff because she failed the EVOC basic skills component twice, and that discrimination played no role in defendant's actions. Accordingly, plaintiff's disparate treatment claims of age and sex discrimination under the NYCHRL are dismissed with prejudice.

30

### 3. Legal Standard for Disparate Impact Claims

A separate provision of the NYCHRL applies to disparate impact claims. *Mihalik*, 715 F.3d at 110 n.7 (citing N.Y.C. Admin. Code § 8-107(17)). To establish an "unlawful discriminatory practice based upon disparate impact" under New York City Administrative Code § 8-107(17), a plaintiff must show that a policy or practice or group of policies or practices results in a disparate impact to a protected group, and the defendant must fail to show as an affirmative defense that the "policy or practice bears a significant relationship to a significant business objective . . . or does not contribute to the disparate impact." N.Y.C. Admin. Code § 8-107(17)(a)(1-2). The plaintiff, however, can rebut defendant by "produc[ing] substantial evidence that an alternative policy or practice with less disparate impact is available . . . and [if] the [defendant] fails to prove that such alternative policy or practice would not serve . . . as well." N.Y.C. Admin. Code § 8-107(17)(a)(2). A "significant business objective" includes, but is not limited to, "successful performance of the job." *Id.*

### 4. Analysis of Disparate Impact Claims

This court has independently considered plaintiff's disparate impact claims of age and sex discrimination under the NYCHRL. For the reasons discussed *supra* in Discussion section

31

C.2, the court finds that plaintiff has failed to show through statistical analysis or any other evidence that the EVOC basic skills component, or any other policy or practice, results in a disparate impact to any protected group or that an alternative practice with less disparate impact is available.  Thus, all of plaintiff's disparate impact claims under the NYCHRL are dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is granted in its entirety and all of plaintiff's claims of age and sex discrimination are dismissed with prejudice.  The clerk of court is respectfully requested to enter judgment in defendant's favor and to close this case. **SO ORDERED.**

Dated: Brooklyn, New York
       September 18, 2013

                                    /s/
                    _____
                    KIYO A. MATSUMOTO
                    United States District Judge
                    Eastern District of New York